### IN RE ASSIGNMENT OF ABRAM BELL.

1. ALLOWANCE IN LIEU OF HOMESTEAD EXEMPTION:

An assignor for the benefit of creditors and his wife are entitled to $500 in lieu of homestead out of the balance of the estate assigned, when the homestead so assigned was so incumbered with liens precluding the allowance of a homestead, as to leave no balance, when sold, in the hands of the assignee, after the payment of such liens, when neither of them have any other homestead.

2. TEMPORARY RESIDENCE IN WIFE'S INCUMBERED PROPERTY.

In such case, where, after the assignment, the assignor and wife moved temporarily into a house belonging to the wife, which was built for sale and not for their residence, and which was incumbered for nearly its value, and which was sold and vacated by them before the hearing on the application for the allowance in lieu of homestead, such facts will not preclude the granting of such allowance.

3. POLICY OF THE LAW.

The homestead laws being designed for the benefit of the debtor, should be so construed as to effectuate and not to thwart its object and policy.

HEARD ON ERROR.

SMITH J.

The following facts appear from the record: On September 24, 1889, Abram Bell assigned all his property, real and personal, to F. S. Spiegel for the benefit of his creditors. It is conceded and shown that the deed of assignment did not, under the provisions of Sec. 6348, Rev. Stat., "cover any property exempt from * * * execution or from being by any legal process applied to the payment of debts" of the assignor. It is further conceded that the real estate so assigned was the family homestead of Bell and wife, and their minor children, and was so occupied by them at the time of the assignment, but the same was covered by mortgages executed by Bell and wife to an amount greater than the value thereof, and when the same was sold by the assignee, the proceeds were not sufficient to pay the mortgage liens thereon. There was, however, $3,100 of personal estate in the hands of the assignee for distribution.

On May, 1891, after the sale of the real estate, Mrs. Bell, the wife of Abram, filed in the probate court a motion that the assignee be required to pay $500 from the personal property, in lieu of a homestead, and setting up the grounds therefor. This motion was denied by the probate court, and an appeal was take by her to the court of common pleas. On the hearing there it further appeared in addition to what has already been stated, that at the time of filing such application in the probate court, Mrs. Bell was the owner of two lots in Bell's subdivision of Cumminsville, on each of which is a new brick house, one of which Mrs. Bell, with her husband and children, then (December 29, 1891), occupied as a homestead, and the allegations of an affidavit filed on behalf of the creditors, were that it was then (at the filing of the affidavit, December 29, 1891,) worth more than $1,000 over and above all incumbrances, and that she, with her husband and children, had occupied it as a homestead ever since they had left the homestead formerly owned by Abram Bell, in which they had lived at the time of his assignment.

The affidavit of Mrs. Bell, first made in the common pleas, dated December 23, 1891, further alleges that by reason of the assignment, and the incumbraces on the real estate, her husband had no homestead, or unincumbered real estate, out of which the $500, in lieu of a homestead, could be allowed, and that it must come, if at all, from such personal estate; that no such allowance was made by the appraisers or the assignee, though demanded by both husband and wife; that neither she or her husband, after the assignment, was the owner of a homestead, but in a subsequent affidavit, made December 28, 1891, she alleges, that, since the filing of her motion, and the decision thereon in the probate court, she had disposed of the two lots in Cumminsville. She says that when they were conveyed to her they were vacant and unimproved, and that in order to pay for them and improve them, she had borrowed money from a building association and given a mortgage thereon, and that the mortgage was nearly or quite the full value of the lots. That at the time the case was heard and decided in the probate court, she, by written contract, had bargained to sell one of them, and was at the same time living with her family in the house on the other lot, but that she had been living there but six weeks, and that she did not purchase or improve said lots or either of them for a homestead, but for the purpose of improving and selling them only for profit, and not for a home, and that their occupation of said premises was temporary only, till she could sell them. She further alleges that it was her separate property and wholly controlled by her, and that since the hearing in the probate court she had sold and conveyed both of said lots, and long ago removed therefrom, and that she was then living in a rented house.

On the hearing, the court of common pleas also refused her application, and overruled a motion for a new trial, and a bill of exceptions was allowed containing all the evidence offered at the trial.

There is substantially no conflict in the evidence as to any material point. Mr. Pugh, in his affidavit for the creditors, says that the Cumminsville lots of Mrs. Bell were worth $1,000 more than the incumbrances upon them. She says that the mortgage was for nearly or quite the full value thereof. There is no denial by either side of the other facts alleged by the other, and they must be taken as true, and on this state of fact the question is, whether Mrs. Bell was entitled to an allowance from the personal estate in the hands of the assignee, of $500, in lieu of a homestead.

In view of the laws on exemptions, and of the decisions of the Supreme Court, we think that it must be conceded that if the homestead property of Bell, which was sold by his assignee, had produced a sum sufficient to pay the liens thereon, which precluded the allowance of a homestead (as they did, his wife having joined with him therein), and $500 in addition that this sum of $500 would have been payable to Bell or his wife, in lieu of the homestead. While Sec. 5440, Rev Stat., does not in express terms provide for such a case, but for one where in addition to liens which preclude the allowance of the homestead, there are other liens which do not preclude it, yet it has been held in two cases, that where the real estate has been sold to pay liens which preclude the allowance of the homestead and there were no others still that the owner should receive from the surplus, an allowance in lieu of his homestead thus

sold. See Kelly v. Duffy, 31 Ohio St., 437 and Jackson v Reid, 32 Ohio St., 443. But in the case at bar there was no such surplus and the question is, can they have the allowance from other property held by the assignee for distribution. It is true that Bartram v. McCracken, 41 Ohio St., 377, holds that where a person is the owner of a homestead, incumbered by liens to an amount more than its value, he can not, while he is the owner of such homestead (as he really is, though so incumbered), have an exemption in lieu of his homestead out of his chattels levied on by an officer. But the case here is a very different one. Bell had assigned to Mr. Spiegel, all of his property, real and personal, not exempt from execution. The homestead property was sold by the assignee, and the family deprived of it. The whole proceeds of the estate was then in the hands of the assignee for disposition under the order of the court. The assignor stands without a homestead, and why should he not have an allowance from the personal estate in lieu of it. If the real estate sold by the assignee had not been the family homestead, and the proceeds had all been exhausted in the payment of liens thereon, there would, we think, be no doubt but that the assignor would have been entitled to the $500, from the personal estate, because that amount of it, under the provisions of Sec. 6348, Rev. Stat., would not be deemed as having been assigned. And in view of the acknowledged and settled principle that the homestead laws being "designed for the *benefit* of the debtor and it should be so construed as to effectuate and not to thwart its object and policy," (Colwell v. Carper, 15 Ohio St., 279, 285) we are of the opinion that at the time the probate court and common pleas court on appeal were severally called on to act as to the distribution of the money in the hands of the assignee, Bell's homestead having been sold, he was entitled to the $500 in lieu thereof, out of the personal estate, unless at the time the wife was the owner of a homestead, which, of course, under the provision of the statute would defeat it. And the case of Niehaus v. Faul, 43 Ohio St. 63 [1 N. E. Rep. 87], seems to be strongly in support of this claim.

The remaining question in the case is, was Mrs. Bell the owner of a homestead at the time of her right thereto was finally disposed of by the court? As has been said, it was shown by the evidence that the time of the adjudication of the question in the probate court, Mrs. Bell held the title to two lots heavily encumbered by mortgage, on one of which was a house in which she was living with her family, that this occupation was temporary only, and that the house was built for sale. Whether this made her such an owner of the homestead as would prevent a successful claim to an allowance in lieu of a homestead is a question of doubt. We do not deem it necessary to decide as to this for this reason: It is admitted that prior to the hearing of the case in the court of common pleas, she had sold this property, and was not then the owner of a homestead. We think it is expressly held in Cooper v. Cooper, 24 Ohio St., 488, and in Niehaus v. Faul, *supra*, that the question of an allowance in lieu of a homestead is to be determined by the state of facts at the time the question of allowance was finally made by the court.

And when the final judgment in this case, which was that of the common pleas court, was rendered, neither Bell or his wife was the owner of a homestead, and the wife in the absence of a claim by her husband thereof was entitled to receive the $500 from the personal property in the hands of the assignee. The judgment of the court of common pleas will therefore be reversed.